Pamela BATSON, Milton Nickerson, Michael Morgan and Doris Willard a/k/a Doris Chilton, Appellants,

v.

**STATE of Alaska, Appellee.**

No. 2745.

Supreme Court of Alaska.

Sept. 9, 1977.

Walter L. Carpeneti and Richard L. Yospin, Asst. Public Defenders, Juneau, Brian C. Shortell, Public Defender, Anchorage, for appellants.

Michael J. Stark, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty. and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

RABINOWITZ, Justice.

Appellants bring this appeal from judgments of conviction which were entered against them for various counts for sales of narcotic, hallucinogenic, stimulant, or depressant drugs. Appellants entered guilty pleas after the superior court determined their respective entrapment defenses against them. An integral part of the negotiated pleas which were accepted by the superior court was the stipulation that the right to appeal the superior court's entrapment rulings was preserved.[1]

Three specifications of error are advanced in this appeal. First, appellants assert that the superior court abused its discretion in denying their motion for production of the "non-drug" expense logs of the undercover officers involved. Second, appellants contend that the superior court erred in ruling that once a showing of entrapment had been made, the prosecution is

---

1. Thus the jurisdictional basis for this appeal was preserved. *Cooksey v. State,* 524 P.2d 1251, 1255 (Alaska 1974).

only required to show by a preponderance of the evidence that entrapment did not occur. In their third specification of error, appellants argue that the superior court's determination, contained in a memorandum supplementing the superior court's original decision on entrapment, that the state had proved beyond a reasonable doubt that entrapment did not occur, lacks the requisite evidentiary support.

In Alaska we have recognized entrapment as a defense in criminal prosecutions.[2] In *Grossman v. State,* 457 P.2d 226, 229 (Alaska 1969), Justice Connor, writing for the court, articulated the "objective" theory of entrapment in the following manner:

> [U]nlawful entrapment occurs when a public law enforcement official, or a person working in cooperation with him, in order to obtain evidence of the commission of an offense, induces another person to commit such an offense by persuasion or inducement which would be effective to persuade an average person, other than one who is ready and willing, to commit such an offense. Conversely, instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment.[3] (footnote omitted)

Unlike Alaska, the lower federal courts and the Supreme Court of the United States have embraced the "subjective" theory of entrapment.[4] Justice Stewart, writing for himself and Justices Brennan and Marshall, in his dissent in *United States v. Russell,*

411 U.S. 423, 440, 93 S.Ct. 1637, 1647, 36 L.Ed.2d 366, 378 (1973), explained the subjective view as follows:

> In *Sorrells v. United States,* [287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)] and *Sherman v. United States,* [356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)] the Court took what might be called a 'subjective' approach to the defense of entrapment. In that view, the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, 'otherwise innocent,' who have been lured to the commission of the prohibited act through the government's instigation. . . . Thus, the subjective approach focuses on the conduct and propensities of the particular defendant in each individual case: if he is 'otherwise innocent,' he may avail himself of the defense; but if he had the 'predisposition' to commit the crime, or if the 'criminal design' originated with him, then—regardless of the nature and extent of the Government's participation—there has been no entrapment.

Adoption of the "objective" approach to the defense of entrapment by the Supreme Court of Alaska was for the purpose of ensuring adequate supervision of law enforcement practices.[5] In *Grossman* we discussed the majority and concurring views in both *Sorrells* and *Sherman* and concluded that the concurrences were better reasoned. In so doing we said:

> [U]nder standards of civilized justice, there must be some control on the kind of police conduct which can be permitted in the manufacture of crime.
>
> *Compare Hampton v. United States,* 425 U.S. 484, 493 n.5, 96 S.Ct. 1646, 1652, 48 L.Ed.2d 113, 121 n.5 (1976) in which Justice Powell, in his separate concurring opinion, alluded to the obligation of federal courts to scrutinize law enforcement practices:
>
> [W]e should not disregard lightly Mr. Justice Frankfurter's view that there is a responsibility "necessarily in [the Court's] keeping . . . to accommodate the dangers of overzealous law enforcement and civilized methods adequate to counter the ingenuity of modern criminals."

---

2. *Evans v. State,* 550 P.2d 830, 843–46 (Alaska 1976); *McKay v. State,* 489 P.2d 145, 149–50 (Alaska 1971); *Grossman v. State,* 457 P.2d 226 (Alaska 1969).

3. *See also* Comment, *Entrapment: An Objective Test for Alaska,* 8 Alaska L.J. 224 (1970).

4. *See, e. g., Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

5. In *Grossman v. State,* 457 P.2d 226, 230 (Alaska 1969), we said:

We feel that the proper solution is the objective test which focuses the determination upon the particular conduct of the police in the case presented. Inducements should be limited to those measures which, objectively considered, are likely to provoke to the commission of crime only those persons, and not others, who are ready and willing to commit a criminal offense.[6]

As articulated in *Grossman,* we viewed the inadequacies of the *Sorrells* and *Sherman* "subjective" approach to the defense of entrapment as follows:

> The result of that logic is that the inquiry becomes limited to one of predisposition, and the defendant is then put on trial for his past offenses and character. . . .
>
> Moreover, the result will differ on whether the defendant has previously committed a crime or has no record. . . .
>
> . . . . .
>
> . . . An external standard, if it can be achieved, is certainly preferable to a doctrine founded in theoretical riddles.[7]

In *Grossman* we also held that under the objective test "the issue of entrapment is to be ruled on by the trial court."[8] In concluding that the question should be determined without submission to the jury, we were of the view that the court, rather than a jury, can best achieve the purpose of deterrence of impermissible police conduct. As Chief Justice Traynor so aptly stated:

> A jury verdict of guilty or not guilty tells the police nothing about the jury's evaluation of the police conduct. · . . Moreover, even when the verdict settles the issue of entrapment in the particular case, it "cannot give significant guidance for official conduct for the future. Only the court, through the gradual evolution of explicit standards in accumulated precedents, can do this with the degree of certainty that wise administration of criminal justice demands."[9] (citations omitted)

Neither in *Grossman* nor in any of our subsequent decisions involving the defense of entrapment has this court been called upon to address questions with respect to the burden of proof. Appellants take the position that once an entrapment defense has been raised, *the burden is then on the prosecution to prove beyond a reasonable doubt that entrapment did not occur.* The state argues that the burden is upon the accused to prove by a preponderance of the evidence that entrapment occurred, or, in the alternative, that the burden is on the state to prove by a preponderance of the evidence that entrapment did not occur.

Appellants apparently concede that the accused has the initial burden of adducing a sufficient quantum of evidence to place the defense of entrapment in issue.[10] Appel-

---

6. *Grossman v. State,* 457 P.2d 226, 229 (Alaska 1969).

7. *Id. See also People v. Moran,* 463 P.2d 763, 767–770 (Cal.1970) (Traynor, C. J., dissenting). In *Grossman,* we offered some guidance on what conduct may constitute entrapment:

> Examples of what might constitute prohibited activity, depending upon an evaluation of the facts in each case, are extreme pleas of desperate illness, appeals based primarily on sympathy, pity, or close personal friendship, and offers of inordinate sums of money. 457 P.2d at 230.

8. *Grossman v. State,* 457 P.2d 226, 231 (Alaska 1969). This procedure was suggested by Justice Frankfurter in *Masciale v. United States,* 356 U.S. 386, 389, 78 S.Ct. 827, 829, 2 L.Ed.2d 859, 861 (1958) (dissenting opinion).

9. *People v. Moran,* 463 P.2d 763, 769 (Cal.1970) (Traynor, C. J., dissenting).

10. Typical of the federal authorities cited by appellants is the Ninth Circuit's decision in *Notaro v. United States,* 363 F.2d 169, 174–75 (9th Cir. 1966). There the court stated:

> Therefore, it seems quite clear that when it can be said that the issue of entrapment has fairly arisen, . . . the defendant has met whatever 'burden' rests upon him.
>
> . . . The issue having appeared, it becomes the prosecution's burden to establish beyond a reasonable doubt that the accused was not entrapped into the commission of the offense.

Illustrative of state judicial authority which has been cited to us by appellants is *Commonwealth v. Berrigan,* 234 Pa.Super. 370, 343 A.2d 355 (1975). There Judge Hoffman said:

> Most courts place the initial burden of persuasion on the entrapment issue on the defendant: "When the defense of entrapment is in issue, the defendant bears the initial burden of showing that the Commonwealth in-

lants argue that once this initial burden is met, the burden shifts to the prosecution to prove beyond a reasonable doubt that the accused was not entrapped into the commission of the offense. Support for appellants' position as to the burden of persuasion is found in the majority of the federal circuits which have passed on the question. These circuits, adhering to the "subjective" theory of entrapment, follow the rule that where the accused has properly raised the issue of entrapment, the burden is on the prosecution to prove beyond a *reasonable doubt* that entrapment did not occur.[11] Appellants have also brought to our attention state precedent reaching the same conclusion.[12] In his dissenting opinion in *People v. Soper*, 57 Mich.App. 677, 226 N.W.2d 691, 692–95 (1975), Judge Danhof articulated one possible rationale for adoption of the standard of proof urged by appellants in the case at bar. Judge Danhof wrote:

Under the Federal 'implied exception' theory, an entrapped defendant cannot be convicted and punished because what he did was not a crime; that is, he did not violate any statute because he comes within an implied exception to that statute. From a procedural standpoint, once the defense of entrapment is raised, the prosecution must prove non-entrapment because it is only by so doing that the

prosecution can prove that the defendant did not come within the implied exception and hence that he has committed a crime. Since application of the statute to the defendant is an essential element which must be proven to establish guilt, it follows in both logic and law that the standard of proof which must be satisfied on the issue of non-entrapment is the same as for any other essential element of the offense; proof beyond a reasonable doubt. Therefore, the 'Federal rule' provides that once the issue of entrapment has been raised, either by the defendant or in any other way, the defendant has met his burden and thereafter the burden is on the prosecution to disprove entrapment beyond a reasonable doubt.[13]

Several of the courts which have adopted the "objective" approach to the defense of entrapment have applied a proof by a preponderance of the evidence standard and have in turn placed the burden of production and persuasion upon the accused to demonstrate entrapment.[14] Section 2.13(2) of the Model Penal Code (1962) provides:

Except as provided in Subsection (3) of this Section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be

duced his alleged offense. . . . Once there is a showing, by a preponderance of the evidence, that a defendant was induced, the burden then shifts to the Commonwealth to establish beyond a reasonable doubt that the defendant was pre-disposed to commit the offense without the active encouragement of the Commonwealth." (citation omitted) 343 A.2d at 360 (separate opinion).

11. *See, e. g., United States v. Gardner*, 516 F.2d 334, 348 (7th Cir. 1975), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89; *United States v. Watson*, 489 F.2d 504 (3d Cir. 1973); *United States v. Ambrose*, 483 F.2d 742 (6th Cir. 1973); *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970); *Notaro v. United States*, 363 F.2d 169 (9th Cir. 1966); *United States v. Sherman*, 200 F.2d 880 (2d Cir. 1952).

12. Among the authorities cited are: *State v. McKinney*, 108 Ariz. 436, 501 P.2d 378 (Ariz. 1972); *Harpe v. State*, 134 Ga.App. 493, 214 S.E.2d 738 (1975); *State v. Carrillo*, 80 N.M. 697, 460 P.2d 62 (N.M.1969); *Striplin v. State*, 499 P.2d 446 (Okl.Crim.1972); *Commonwealth*

*v. Berrigan*, 234 Pa.Super. 370, 343 A.2d 355 (1975); *State v. Amundson*, 69 Wis.2d 230 N.W.2d 554, 775 (1975).

13. 226 N.W.2d at 694. Other courts following the subjective test have imposed the burden of proof beyond a reasonable doubt on differing grounds. For example, the court in *Waker v. United States*, 344 F.2d 795, 796 n.3 (1st Cir. 1965), stated:

We have concluded that although, strictly, an element of the offense is not involved, it would be unduly confusing to instruct the jury that the government's burden is any the less on this issue than it is on other parts of its case.

14. *See, e. g., People v. Moran*, 463 P.2d 763 (Cal.1970); *Crosby v. State*, 295 A.2d 708 (Del. 1972); *State v. Brown*, 287 A.2d 400 (Del.Super.1972). *Cf. State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (N.M.App.1972). *But see State v. Overmann*, 220 N.W.2d 914 (Iowa 1974).

tried by the Court in the absence of the jury.[15]

In analyzing the burden issue, the court in *State v. Brown,* 287 A.2d 400, 403 (Del.Super.1972) said:

> It is unfortunate that many courts have failed to recognize the philosophical basis of the entrapment doctrine and this failure may have led many state courts to follow blindly the federal. precedent on burden of proof.

The court went on to note:

> The public has just concern that persons who commit acts forbidden by law not be excused by complex legal rationalization which does not make common sense. In the area of entrapment, a Court created doctrine, common sense dictates that the persuasion burden of proof on the reason why the illegal act was committed should lie with the defendant who committed it.[16]

 Although resolution of the issue is extremely difficult, and there are sound arguments for placing the burden on the prosecution to prove beyond a reasonable doubt that entrapment did not occur, we think that, on balance, the better reasoned position is to require the defendant to prove entrapment by a preponderance of the evidence. Given this court's prior adoption of the objective theory of entrapment and our concomitant holding that entrapment issues are for the decision of the court, not the jury, *we conclude that the burden of proving by a preponderance of the evidence that entrapment took place should rest with the accused.* The focus of any entrapment inquiry under Alaska's objective test is upon the particular conduct of the police with a view to deterrence of impermissible conduct through articulation of explicit standards by the court. In regard to such inquiries, we agree with the reasoning of the drafters of the Model Penal Code, and those courts which have concluded that the entrapment inquiry deals with facts which are in essence collateral to the central inquiry of the guilt or innocence of the accused. In light of the thrust of the entrapment defense, which focuses the inquiry upon the conduct of the police rather than on the guilt of the accused, *we hold that the accused must carry the burden of establishing the defense by a preponderance of the evidence.*

Given this conclusion it would follow that we should next address the issue of whether the superior court was correct in its determination that appellants failed to make out an entrapment defense. However, we are not in a position to rule upon the sufficiency of appellants' evidence of entrapment because the superior court erroneously denied a relevant discovery motion which appellants made prior to the entrapment hearing.

 As mentioned previously appellants advanced the argument that the trial court committed error by virtue of its denial of their motion for production of the non-drug expense logs of the two undercover officers involved in these drug cases. Initially appellants made an oral motion which sought the production, inspection and copying of the officers' non-drug expense logs. The following day appellants filed a brief in support of the motion. In this document appellants asserted that the materials

---

**15.** The remainder of the text of § 2.13 of the Model Penal Code reads:

(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

 (a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

 (b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

. . . . .

(3) The defense afforded by this Section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

**16.** 287 A.2d at 404. *Accord, People v. Laietta,* 30 N.Y.2d 68, 330 N.Y.S.2d 351, 281 N.E.2d 157, 161 (1972); *People v. Moran,* 463 P.2d 763, 765–66 (Cal.1970); Model Penal Code § 1.12.

sought pursuant to Criminal Rule 16 were essential to a determination of the entrapment issue. Focusing upon two of the criteria articulated in *Grossman,* namely, whether the police officers sought to induce unlawful conduct by presenting appellants with a possibility of exorbitant gain, or by making appeals based on friendship, appellants stated that they would "show at a hearing on the issue of entrapment, that quantities of money and gifts and purchases in kind were given to the [appellants] and others during the course of the officers' investigation." They went on to say that they had "no way of knowing the exact amount of money that was spent by undercover officers in procuring and inculcating their friendship, other than by examining the officers' own records on this subject." [17] Subsequently, the superior court denied without prejudice appellants' motion for production. In its order denying the subject motion, the superior court stated that "[u]pon a sufficient evidentiary showing of the materiality of the requested information the motion may be renewed." [18] Appellants did not renew their motion for production; the entrapment hearing was held shortly after the denial of the discovery motion.

■ Criminal Rule 16(a) provides:

Scope of Discovery. In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system.

Portions of Criminal Rule 16(b) which are possibly relevant include:

(3) *Information Tending to Negate Guilt or Reduce Punishment.* The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor.

(4) *Information Within Possession or Control of Other Members of Prosecuting Attorney's Staff.* The prosecuting attorney's obligations extend to material and information in the possession or control of

(i) members of his staff, and

(ii) any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.[19]

**17.** In their memorandum appellants further alleged:

A complete understanding of non-drug expenses in these cases requires examination of these specific documents—merely examining a public audit of the entire Department of Public Safety would not give [appellants] a clear picture of expenses in these particular cases.

**18.** The state takes the position that even if the superior court erred in denying appellants' motion for production of non-drug expense logs, appellants are precluded from asserting this error on appeal. Pointing to the language of the superior court's order, the state argues that since appellants did not renew their motion they should be precluded from asserting on appeal that the requested information was erroneously denied them. The state relies primarily upon *Wyller v. Fairchild Hiller Corp.,* 503 F.2d 506, 509 (9th Cir. 1974) and *Torres v. State,* 519 P.2d 788, 794–95 (Alaska 1974).

We disagree with the state's position. The superior court's order was a final order and the

language relied upon by the state is permissive. It did not impose a mandatory obligation upon appellants to renew their discovery motion. The materiality of the non-drug expense logs was shown in appellants brief filed in support of the motion. As appellants state: "A further showing of the materiality of the items for which discovery was sought could only be made if those items were in fact inspected by appellants." The decisional authority relied upon by the state is distinguishable from the instant case in that here the trial court made a ruling and movants were thereafter under no legal compulsion to renew their discovery motion.

**19.** See also subsection (5) of Criminal Rule 16(b) which provides:

(5) *Availability of Information to Defense Counsel.* Whenever defense counsel designates and requests production of material or information which would be discoverable if in the possession or control of the prosecuting attorney, the prosecuting attorney shall

Assuming that the materials and information sought by appellants is not covered by subsections (b)(1), (b)(2), (b)(3), or (b)(6) of Criminal Rule 16,[20] we are of the view that appellants' request for production met the "reasonable request showing materiality to the preparation of the defense" criterion of subsection (7) of Criminal Rule 16(b) and that the superior court abused its discretion in denying the motion. Additionally, we think that given the relevancy of the information and materials sought, they may come within the ambit of Criminal Rule 16(b)(3), where it is provided that the prosecuting attorney shall disclose "any material or information within [the prosecuting attorney's] possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor." In many respects Criminal Rule 16(b)(3) parallels the rule articulated by the Supreme Court of the United States in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[21] There the Court established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[22]

In *Grossman v. State,* 457 P.2d 226, 230 (Alaska 1969), this court gave several examples of what may constitute entrapment. Among the examples given were appeals by enforcement personnel based on close personal friendship and offers of inordinate sums of money as well as the possibility of exorbitant gains. As to the application of these criteria appellants argue:

> The relevance of the information sought to the entrapment defense should be clear. [Appellants] contended, *inter alia,* that the undercover officers at-

tempted to hold out to the defendants the possibility of exorbitant gain, and to create the aura of close personal friendship, by freely and lavishly spending money on the [appellants] during the course of the five months undercover operation. One measure of the undercover officers' efforts in these directions would have been the amount of money which they spent during their time in Juneau, especially in buying drinks for the defendants, or in making gifts or loans to the defendants, or in any other way designed to hold out the promise of high gain or to create the aura of friendship.

We agree with this argument. Our review of the record in this matter has convinced us that the non-drug expense logs were material to the defense of entrapment and it was thus error for the superior court to deny appellants' Criminal Rule 16 discovery motion.

Given this holding we have determined to remand the matter to the superior court. Upon remand the superior court is directed to enter an order requiring the state to produce the logs in question. Thereafter the superior court is expeditiously to conduct such further hearings and proceedings concerning the entrapment defenses as it deems appropriate and shall at the conclusion of such proceedings review the matter in accordance with the standard of proof articulated in this opinion. If the superior court should conclude after such further proceedings that the claims of entrapment were not sustained, the convictions shall stand. Otherwise, the superior court should enter a judgment of acquittal as to any case in which it believes the entrapment defense to be sustained.

Reversed in part and remanded with directions.

---

use diligent good faith efforts to make such material available to defense counsel. . .

**20.** Subsection (7) of Criminal Rule 16(b) provides:

(7) *Other Information.* Upon a reasonable request showing materiality to the preparation of the defense, the court in its discretion may require disclosure to defense counsel of

relevant material and information not covered by subsections (b)(1), (b)(2), (b)(3), and (b)(6).

**21.** *See also Scott v. State,* 519 P.2d 774, 778 (Alaska 1974).

**22.** *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963).